UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICK HARRISON, JOHN BUCKLEY III, MARGARET LOPEZ, ANDY LOPEZ, KEITH LORENSEN, LISA LORENSEN, EDWARD LOVE, ROBERT MCTUREOUS, DAVID MORALES, GINA MORRIS, MARTIN SONGER, JR., SHELLY SONGER, JEREMY STEWARD, KESHA STIDHAM, AARON TONEY, ERIC WILLIAMS, CARL WINGATE, and TRACEY SMITH, as Personal Representative of the Estate of RUBIN SMITH, <br><br> Plaintiffs / Judgment Creditors, <br><br> v. <br><br> THE REPUBLIC OF SUDAN, <br><br> Defendant / Judgment Debtor. | No. MC 13-80116 JSW (LB) <br><br> **REPORT AND RECOMMENDATION REGARDING APPLICATION OF ORDER REGARDING 28 U.S.C. § 1610(c); ORDER GRANTING REQUEST FOR JUDICIAL NOTICE** <br><br> [RE: ECF NOS. 5, 6, 8] |

## INTRODUCTION

Plaintiffs, U.S.S. Cole crew members injured in a 2000 attack by Al Qaeda agents on the vessel and spouses of several crew members, obtained a $314,705,896.00 default judgment in the United States District Court for the District of Columbia against the Republic of Sudan for providing material support to Al Qaeda. *See* Pls.' Request for Judicial Notice, ECF No. 6 at 6-7, Exs. A (Order

and Judgment) and B (Memorandum Opinion).[1]  Plaintiffs filed an ex parte application for "an order, pursuant to 28 U.S.C. § 1610(c), that the Republic of Sudan has had appropriate statutory notice of the lawsuit against it and, after more than one year following service of that lawsuit, has had an adequate period of time to respond." so that "plaintiffs may begin their efforts to collect" assets located in this district.  Ex Parte Application, ECF No. 5.  Following the district court's referral for a report and recommendation, *see* Order, ECF No. 8, the undersigned recommends granting the application.  The court also grants Plaintiffs' Request For Judicial Notice of the public records attached to it.  *See* Request, ECF No. 6.[2]

## STATEMENT

In their District of Columbia case, Plaintiffs alleged that Sudan was liable under the "state-sponsored terrorism" exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*, by providing material support to Al Qaeda, which perpetrated the U.S.S. Cole bombing.  *See Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 26-27 (D.D.C. 2012).  The D.C. district court found that Plaintiffs adequately effected service on Sudan, but Sudan failed to respond.  *Id.*  In order to satisfy the FSIA's heightened scrutiny for default judgments, *see* 28 U.S.C. § 1608(e), the district court held an evidentiary hearing, heard expert testimony, and accepted depositions, affidavits, and original documentary evidence.  *Id.* at 28.  Based on these submissions, the court entered default judgment against Sudan, and, on March 30, 2012, awarded Plaintiffs $78,676,474 in compensatory damages and $236,029,422 in punitive damages.  *Id.* at 51-52.

Following the entry of default judgment in their favor, Plaintiffs asked the clerk of the D.C. District Court to notify Sudan.  *See* Pls.' Request for Judicial Notice Ex. C, ECF No. 6 at 65-66 (Dkt. Nos. 42-44 in *Harrison v. Republic of Sudan*, No. C 10-1689-RCL (D.D.C.)).  The docket also indicates that the clerk of the D.C. District Court mailed one copy of the Notice of Default Final Judgment, Memorandum Opinion, and Order and Judgment, "together with a translation of each into

---

[1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

[2]  Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without a hearing.

MC 13-80116 JSW (LB)
ORDER                                              2

the official language of the foreign state on 4/20/2012, by certified mail, return receipt requested, to the head of the ministry of foreign affairs, pursuant to 28 U.S.C. 1608(a)(3)." *Id.* at 66 (Dkt. No. 45).

On May 29, 2013, Plaintiffs registered their judgment in this district, ECF No. 1, and on May 30, the clerk of the court issued a Writ of Execution against the Republic of Sudan for $315,438,772.74 (judgment plus interest), ECF No. 3.  On June 2, 2013, Plaintiffs' counsel filed a Notice of Pending Action, which stated that it provided notice "pursuant to 28 U.S.C. § 1605A(g)" that the Judgment against Sudan affected all property located in this judicial district owned by "the Defendant, Republic of Sudan, and the following controlled entities (agencies and/or instrumentalities of Sudan)."  Notice of *Lis Pendens*, ECF No. 4 at 2-16.  The Notice of *Lis Pendens* lists the Republic of Sudan and 282 other entities and copies of the Complaint and the March 30, 2012 Order & Judgment in the D.C. District Court action are attached. *Id.*

## ANALYSIS

Plaintiffs ask the court to find that they have fulfilled the notice and timing requirements under the Foreign Sovereign Immunities Act and seek an order permitting them to "use all procedures available under local law to attach blocked property of the Judgment Debtor located within this jurisdiction." Application, ECF No. 5 at 14.

### I. THE FOREIGN SOVEREIGN IMMUNITIES ACT

Plaintiffs' claim arises under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1601-11, which provides "the sole basis for jurisdiction over a foreign state in the United States." *Argentine Republic v. Amerda Hess Shipping Corp.*, 488 U.S. 434 (1989).  Under the FSIA, foreign states normally have sovereign immunity in U.S. courts, and their assets are immune from attachment and execution. *See* 28 U.S.C. § 1604 (immunity of a foreign state from jurisdiction); § 1609 (immunity from attachment and execution of property of a foreign state).  Plaintiffs' claims, however, fall under the FSIA's state-sponsored terrorism exception, codified at 28 U.S.C. § 1605A and referenced in related FSIA provisions.  When it applies, the state-sponsored terrorism exception abrogates sovereign immunity, § 1605A(a)(1), creates a cause of action for claims that foreign states provided material support for extrajudicial killing, § 1605A(c), and also provides a mechanism for

enforcing such judgments, § 1605A(g), § 1610(g).

With regard to sovereign immunity, 28 U.S.C. § 1605A provides that a foreign state is not immune from suits in which

> (1) money damages are sought (2) against that state for (3) personal injury or death that (4) was 'caused by' (5) an act of torture, extrajudicial killing . . . or the provision of material support of resources for such an act if such act or provision of material support or resources is engaged in by an official, employee or agent of such foreign state while acting within the scope of his or her office, employment or agency.

*Harrison*, 882 F. Supp. 2d at 29 (paraphrasing 28 U.S.C. § 1605A(a)(1)).

The state-sponsored terrorism exception also has broad provisions for enforcing judgments. First, when the judgment relates to a claim under the state-sponsored terrorism exception, 28 U.S.C. § 1610 abrogates immunity "from attachment in aid of execution, or from execution" for property that (1) belongs to a foreign state, (2) is in the United States, and (3) is "used for a commercial activity in the United States." *Id.* § 1610(a). Second, when the exception applies, there is no immunity for "property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States." In both cases, there is no immunity "regardless of whether the property is or was involved with the act upon which the claim is based." *Id.* § 1610. Even more broadly, the property of the foreign state and that of its agencies and instrumentalities may be subject to attachment in aid of execution and execution to enforce a judgment under § 1605A. *See* 28 U.S.C. § 1610(g). That subsection states the following:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity . . . is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of–
>
> (A) the level of economic control over the property by the government of the foreign state;
>
> (B) whether the profits of the property go to that government;
>
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>
> (D) whether that government is the sole beneficiary in interest of the property; or
>
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g). All that is by way of background.

In their application, Plaintiffs seek an order that they have complied with the FSIA's prerequisites to attachment and execution. *See* Application, ECF No. 5 at 4. These prerequisites are mandated by 28 U.S.C. § 1610(c), which provides the following:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). Thus, there are three issues before the court: (1) whether Plaintiffs gave any notice required under section 28 U.S.C. § 1608(e), and if so, (2) whether a reasonable period of time has elapsed following that notice and the entry of judgment, and (3) whether the district court should issue an order permitting Plaintiffs to begin its efforts to attach Sudan's assets in this district. *Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 101-02 (D.D.C. 2011). The court addresses each issue in turn.

**II. WHETHER PLAINTIFFS HAVE SATISFIED § 1610(c)**

**A. Notice Under § 1608(e)**

The first issue is whether Plaintiffs complied with section 1608(e)'s notice provisions. When a plaintiff obtains a default judgment under the FSIA, section 1608(e) mandates that "[a] copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." 28 U.S.C. § 1608(e).

Section 1608(a) prescribes four methods for serving a foreign state, and the third is applicable here. The FSIA lists the four forms of service in descending order of preference:

> (a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign site, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned; or

MC 13-80116 JSW (LB)
ORDER                                              5

>  (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services-and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a). The first two do not apply because there is no "special arrangement for service" between the U.S. and Sudan, and Sudan is not a party to any "international convention on service of judicial documents," *Id.*; *see, e.g., Rux v. Republic of Sudan*, No. CIV.A.2:04CV428, 2005 WL 2086202, at *16 (E.D. Va. Aug. 26, 2005) (noting that Sudan agreed that service of process under subsections (1) and (2) was unavailable to the plaintiffs), *aff'd in relevant part, appeal dismissed in part,* 461 F.3d 461 (4th Cir. 2006); *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006) (noting that the preferred method of service on Sudan is section 1608(a)(3) absent a "special arrangement" because Sudan is not party to an international convention on service of judicial documents); *see also, Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 133-34 (D.D.C. 2011) (finding in multiple consolidated FSIA cases that service of process was completed upon the Republic of Sudan where plaintiffs followed subsections (3) and (4)).

Here, Plaintiffs filed an "Affidavit Requesting Foreign Mailing" in the D.C. District Court requesting the clerk of court to send the attached papers by "registered mail, return receipt requested," *see Harrison*, No. 10-01689-RCL, at ECF No. 42, and attaching the appropriate papers and translations, *id.*, ECF No. 43. The D.C. District Court Deputy Clerk filed a certificate of mailing along with a copy of the envelope. *Id.* at ECF No. 45. Accordingly, the court recommends the district court find that Plaintiffs properly effected service under 28 U.S.C. §§ 1608(a)(3), (e), and 1610(c).

**B. Whether a Reasonable Period of Time Has Elapsed**

The next issue is whether "a reasonable period of time has elapsed following the entry of judgment" and the notice under § 1608(e). Though the FSIA does not provide any guidelines for determining the period of time that is reasonable, other federal courts have found periods of several months to be sufficient under the FSIA. *See Ned's Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (determining that six weeks was reasonable and

collecting cases in which "other courts have found periods such as two or three months sufficient to satisfy section 1610(c)'s requirements"); *Baker*, 810 F. Supp. 2d at 90 (90 days was reasonable); *Karaha Bodas Co., LLC v. Perushaan Pertambangan Minyak Dan Gas Bumi Negara,* No. H-01-0634, 2002 WL 32107929 at *2 (S.D. Tex. Jan. 25, 2002) (concluding that 50 days was a reasonable period of time); *Gadsby & Hannah v. Socialist Republic of Romania,* 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (concluding that two months was a reasonable period of time). Similarly, in *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, the court concluded that one year after entry of the default judgment and eight months after notice was given was sufficient. 798 F. Supp. 2d 260, 270 (D.D.C. 2011).

Here, the D.C. District Court entered the default judgment on March 30, 2012 and mailed the notice of default judgment on April 20. *See* RJN Ex. C, ECF No. 6 at 64-66. It has been more than 14 months since Plaintiffs gave the requisite notice. This is an ample amount of time under § 1610(c). Accordingly, the court recommends the district court find that a reasonable period of time has elapsed under § 16010(c).

## III. WHETHER TO PERMIT PLAINTIFFS TO "BEGIN EFFORTS" TO ATTACH

Finally, Plaintiffs ask the court to issue an order authorizing them to "use all procedures available under local law to attach blocked property of the Judgment Debtor located within this jurisdiction." Application, ECF No. 5 at 14. Plaintiffs contend that assets of Sudan's and its agents and instrumentalities were frozen under the International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq.*, and that attachment is authorized by the Terrorism Risk Insurance Act of 2002, Pub.L. No. 107-297, § 201(a), 116 Stat. 2322, 2337.

Plaintiffs seek only authorization to "begin efforts to collect." Application, ECF No. 5 at 1; *see also* Proposed Order, ECF No. 7 at 2 (asking for order that "Plaintiffs are hereby authorized to seek attachment of frozen assets located within this jurisdiction using postjudgment enforcement procedures"). That is, their proposed order seeks authorization that they have satisfied the prerequisites so that they may begin the attachment and execution process. They have met those requirements, and the undersigned recommends that the district court issue their proposed order.

Plaintiffs' proposed order cannot be construed as any authorization to attach any particular asset.

That is because before a court can authorize attachment or execution, Plaintiffs will have to provide specific evidence that FSIA abrogates immunity and permits attachment and execution upon each property in question. *See, e.g., Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1122, 1126-28 (9th Cir. 2010) (concluding that the district court must independently raise and decide whether the property is immune from attachment under § 1609); *see also Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 801 (7th Cir. 2011) (holding that "the court must independently satisfy itself that an exception to § 1609 immunity applies before ordering attachment or other execution on foreign-state property in the United States."); *FG Hemisphere Assocs., LLC v. République du Congo*, 455 F.3d 575, 594 (5th Cir. 2006) (noting that prior to issuing a garnishment order, a district court must make factual findings that support application of the § 1610(a) exception to executional immunity); *cf. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) ("the *sine qua non* of basing jurisdiction on a defendant's assets in the forum is the identification of some asset").

Plaintiffs may provide this information as they begin the process for the individual properties they have identified.

## CONCLUSION

The undersigned grants Plaintiffs' request for judicial notice and recommends that the district court grant Plaintiffs' application. Plaintiffs' proposed order at ECF No. 7 is sufficient.

Any party may file objections to this Report and Recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED AND RECOMMENDED.**

Dated: June 24, 2013

LAUREL BEELER
United States Magistrate Judge